**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STUSSY, INC.,<br><br>    *Plaintiff,*<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>    *Defendants.* | Case No.: 26-cv-02870<br><br>**Chief Judge Virginia M. Kendall**<br><br>**Magistrate Judge Daniel P. McLaughlin** |

**DEFENDANT NIOKIT'S MOTION TO DISMISS FOR LACK OF
<u>PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2)</u>**

**TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ......................................................................................................... 1

**FACTUAL BACKGROUND** ........................................................................................ 2

**LEGAL STANDARDS** ................................................................................................. 3

**ARGUMENT** ................................................................................................................. 5

      I.      THE COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER NIOKIT
........................................................................................................................ 5

            A.      Stussy Fails to Establish Purposeful Availment by NIOKIT ...................... 5

            B.      Stussy Fails to Demonstrate That Its Claims Arise Out of or Relate to NIOKIT's Alleged Contacts with Illinois .................................................. 11

            C.      A Single, Plaintiff-Orchestrated Sale Cannot Satisfy Due Process Requirements for Personal Jurisdiction ...................................................... 11

      II.     RULE 4(k)(2) DOES NOT CURE THE ABSENCE OF PERSONAL JURISDICTION ................................................................................................ 13

**CONCLUSION** ........................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ........................................................................................ 11

*Asahi Metal Indus. Co, v. Super. Ct. of Cal.*,
480 U.S. 102 (1987) ...................................................................................................... 12

*Brandon Wade Licensing, LLC v. Terezowens.com, LLC*,
No. 12 C 9113, 2013 WL 1446356 (N.D. Ill. Apr. 9, 2013) ......................................... 12

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017) .................................................................................................. 11

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
42 F.4th 948 (8th Cir. 2022) .......................................................................................... 12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........................................................................................... 5, 6, 9, 14

*Calder v. Jones*,
465 U.S. 783 (1984) .................................................................................................... 7, 8

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) .................................................................................... 14, 15

*Curry v. Revolution Lab'ys, LLC*,
949 F.3d 385 (7th Cir. 2020) ................................................................................ 3, 5, 6, 9

*Eicher Motors Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*,
794 F. Supp. 3d 543 (N.D. Ill. 2025) ............................................................................... 5

*Forcel Media Ltd. v. DECI*,
No. 2:25-cv-750, 2025 WL 1665586 (W.D. Pa. June 12, 2025) .................................... 13

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ...................................................................................................... 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ...................................................................................................... 11

*Illinois v. Hemi Grp., LLC*,
622 F.3d 754 (7th Cir. 2010) ..................................................................................... 4, 10

*In re "Schedule A" Cases*,
No. 2:25-cv-926, 2025 WL 1906814 (W.D. Pa. July 10, 2025) .................................... 13

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ...................................................................................................... 11

ii

*J. McIntyre Machinery, Ltd. v. Nicastro*,
564 U.S. 873 (2011) ............................................................................................... 12

*J.S.T. Corp v. Foxconn Interconnect Tech. Ltd.*,
965 F.3d 571 (7th Cir. 2020) .................................................................................... 4

*Lightfoot v. Cendant Mortg. Corp.*,
580 U.S. 82 (2017) .................................................................................................... 3

*Liu v. Monthly*,
No. 25-2074, 2026 WL 681773 (7th Cir. 2026) ....................................................... 5

*Manchester United Football Club Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule A*,
No. 24-cv-5692, 2024 WL 5202272 (N.D. Ill. 2024) .............................................. 4

*Matlin v. Spin Master Corp.*,
921 F.3d 701 (7th Cir. 2019) .................................................................................. 10

*N. Grain Mktg., LLC v. Greving*,
743 F.3d 487 (7th Cir. 2014) .................................................................................. 12

*Nifty Home Products, Inc. v. Ladynana US*,
No. 23-1332, 2024 WL 4987245 (3d Cir. 2024) .................................................... 12

*Philadelphia Indemnity Insurance Co. v. Dreamershop Trade Ltd.*,
No. 2:24-cv-1569, 2025 WL 2282567 (W.D. Pa. Aug. 8, 2025) ............................ 13

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) .................................................................................... 4

*Tamburo v. Dworkin*,
601 F.3d 693 (7th Cir. 2010) .................................................................................... 4

*Tee Turtle LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A to Complaint*,
No. 25-cv-02910, 2025 WL 2880218 (N.D. Ill. 2025) ............................................ 4

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) ................................................................................... 12

*uBID, Inc. v. GoDaddy Grp., Inc.*,
623 F.3d 421 (7th Cir. 2010) .................................................................................... 4

*Walden v. Fiore*,
571 U.S. 277 (2014) ................................................................... 6, 7, 8, 9, 10, 11

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) .................................................................. 1

Federal Rule of Civil Procedure 4(k)(2) ............................................................ 13, 15

Lei Zhu, *Made in China, Sued in the U.S.: The Exploitation of Civil Procedure in Cross-Border E-Commerce Trademark Infringement Cases*, 34 Duke J. Comp. & Int'l L. 139, 140 (2023) .......... 1

## **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant NIOKIT respectfully moves to dismiss this action for lack of personal jurisdiction. At its core, this case presents a fundamental question of constitutional limits: whether a single, litigation-driven test purchase—engineered by Plaintiff Stussy Inc. ("Stussy")—can satisfy the Due Process Clause's requirement of minimum contacts. It cannot.

While the Schedule A mechanism has become a commonly used tool in this District for intellectual property enforcement, its widespread use has increasingly strained the limits of procedural and constitutional safeguards. As courts and commentators have recognized, the rapid proliferation of such cases—often concentrated in a small number of judicial districts—has led to practices that risk expanding jurisdiction beyond its lawful bounds.[1]

In many Schedule A actions, plaintiffs rely on a single, plaintiff-directed purchase shipped to an Illinois address to assert personal jurisdiction over foreign e-commerce defendants, regardless of whether those defendants have any meaningful or sustained contacts with the forum. That manufactured contact is then used to support *ex parte* temporary restraining orders and sweeping asset freezes, effectively disabling entire online storefronts—including sales of products wholly unrelated to the asserted claims. Faced with frozen accounts and the inability to conduct business, foreign defendants are often compelled to settle under significant pressure, frequently in amounts disconnected from any adjudicated liability.

---

[1] *See* Lei Zhu, *Made in China, Sued in the U.S.: The Exploitation of Civil Procedure in Cross-Border E-Commerce Trademark Infringement Cases*, 34 Duke J. Comp. & Int'l L. 139, 140 (2023) ("It is estimated that the Chinese cross-border e-commerce industry reached a market size of more than $3.5 trillion in 2020. However, many do not know that these Chinese sellers are being targeted by a wave of trademark infringement lawsuits in U.S. federal courts ... that began in the early 2010's, with the Northern District of Illinois being the most-favored forum to file such suits.").

This case follows that same pattern. Stussy seeks to ground jurisdiction on a single, litigation-driven transaction, while disregarding the absence of any genuine, defendant-created contacts with Illinois. At the same time, it ignores the fact that many Amazon-based sellers—including NIOKIT—conduct their U.S.-facing business through contractual relationships centered in Washington State, where they have agreed to governing law and forum provisions. Those facts underscore the absence of any purposeful availment of Illinois and further confirm that jurisdiction in this Court is improper.

The Constitution does not permit personal jurisdiction to be manufactured through unilateral acts of the plaintiff. Nor does it allow courts to exercise authority over defendants who lack meaningful, forum-directed conduct. Because Stussy's jurisdictional theory rests on precisely such contrived contacts, this Court should dismiss the action against NIOKIT for lack of personal jurisdiction.

## FACTUAL BACKGROUND

Defendant NIOKIT is an Amazon storefront operated by Linlin Xu. *See* Declaration of Linlin Xu ("Xu Decl.") ¶ 1. NIOKIT conducts business through the Amazon platform pursuant to a seller agreement with Amazon.com Services LLC, whose principal place of business is in Washington. *Id*. ¶ 2. The seller agreement governing NIOKIT's use of Amazon's platform is entered into with Amazon.com Services LLC for sales directed to the U.S. market. *See* Ex. 1 at 8. The agreement further provides that it is governed by the laws of the State of Washington and designates the state or federal courts located in King County, Washington, as the "Governing Courts" for disputes arising under the agreement. *Id*. at 9.

Through the Amazon storefront, NIOKIT maintained listings for various products, including the accused product identified as ASIN B0CJMBQLQZ (the "Accused Product"). *See*

2

Xu Decl. ¶ 3. Prior to February 3, 2026, NIOKIT had not sold the Accused Product in Illinois or anywhere else in the United States. *Id*. ¶ 4. The only purchase of the Accused Product occurred on February 3, 2026. *Id*. ¶ 5. That item was shipped on or about February 5, 2026 and delivered on or about February 17, 2026 to an address in Chicago, Illinois. *Id*.

Upon information and belief, that February 3, 2026 transaction is the sole transaction on which Plaintiff Stussy relies to assert personal jurisdiction over NIOKIT in this action. *Id*. ¶ 7; Ex. 2. Thus, the only alleged Illinois contact tied to NIOKIT is a single purchase made in anticipation of this litigation.

After this case was initiated, Amazon imposed restrictions on NIOKIT's seller account. On March 25, 2026, Amazon notified Xu that "[y]our disbursements from your seller account have been placed on hold." *See* Xu Decl. ¶ 8; Ex. 4. As a result, NIOKIT's Amazon storefront has been effectively disabled. *See* Xu Decl. ¶ 9. NIOKIT is unable to sell any products on Amazon, whether accused products or entirely unrelated products, pending resolution of this case and the associated injunctive relief. *Id*.

Accordingly, the record reflects that NIOKIT's alleged contact with Illinois consists of only a single transaction, and that following the filing of this action, NIOKIT's entire Amazon business was effectively frozen. These facts form the basis for NIOKIT's challenge to personal jurisdiction.

## LEGAL STANDARDS

The Court must ensure that it has jurisdiction over the parties before it can resolve a case. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). "[O]nce the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v.*

*Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). The Court ruled on the motion to dismiss "without the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010).

Personal jurisdiction is governed by the Illinois long-arm statute and the Fourteenth Amendment's Due Process Clause. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The Illinois long-arm statute is "coextensive with the Federal Constitution's Due Process Clause," and therefore confers personal jurisdiction to the full extent permitted by federal due process. *Manchester United Football Club Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 24-cv-5692, 2024 WL 5202272, at \*2 (N.D. Ill. 2024).

Under federal due process, personal jurisdiction may be either general or specific. *J.S.T. Corp v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020). Here, it is clear from the face of the Complaint that Stussy asserts specific personal jurisdiction only.

"Specific personal jurisdiction focuses on the connection between the defendant, the state, and the underlying controversy." *Tee Turtle LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A to Complaint*, No. 25-cv-02910, 2025 WL 2880218, at \*2 (N.D. Ill. 2025) (internal citations omitted). This "defendant-focused" inquiry requires the Court to examine "defendant's contacts with the state itself in making a minimum contact determination." *Id*. When these principles are applied to online sellers, courts must "ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum." *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

To exercise specific personal jurisdiction over defendants, the plaintiff must demonstrate:

4

(1) defendants purposefully availed themselves of the privilege of conducting business in the forum state; (2) plaintiff's alleged injury must have arisen out of defendants' forum-related activities; and (3) any exercise of personal jurisdiction comports with the traditional notions of fair play and substantial justice. *Curry*, 949 F.3d at 398.

## ARGUMENT

### I. THE COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER NIOKIT

#### A. Stussy Fails to Establish Purposeful Availment by NIOKIT

Personal jurisdiction has long been recognized as a threshold inquiry that "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985). This constitutional safeguard, grounded in the Due Process Clause, is not a mere technicality—it is a fundamental limitation on the exercise of judicial power.

That principle has been increasingly strained in the context of so-called "Schedule A" litigation. In these cases, foreign defendants—many of whom have no meaningful contacts with Illinois, and in some instances no purposeful contacts with the United States at all—are haled into this forum based solely on a single, plaintiff-orchestrated transaction. *Liu v. Monthly*, No. 25-2074, 2026 WL 681773, at *2 (7th Cir. Mar. 9, 2026) ("In the context of Schedule A litigation, the defendant's operation of an online store accessible in the forum state, combined with sales in the forum state, has been found sufficient to subject that defendant to personal jurisdiction."). Such manufactured contacts are then invoked to establish a *prima facie* case of personal jurisdiction, often accompanied by sweeping *ex parte* relief freezing assets wholly unrelated to the accused products. *Eicher Motors Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 794 F. Supp. 3d 543, 545 (N.D. Ill. 2025) ("Along with the complaint, the plaintiff

5

also files motions to restrain the defendants' assets held in online marketplace accounts (most defendants are foreign storefronts doing business on popular e-commerce platforms such as Amazon, Etsy, and Walmart) and to enter a temporary restraining order barring further infringement. But these requests are typically not litigated in adversarial fashion, as plaintiffs almost always seek and obtain leave to proceed under seal and *ex parte*.").

NIOKIT is not an outlier. Rather, it exemplifies a broader pattern in which jurisdiction is asserted on the basis of contrived and isolated acts that fall far short of the "minimum contacts" required by due process. This approach not only erodes the constitutional limits articulated by the Supreme Court, but also risks converting federal courts into forums of universal jurisdiction—contrary to the constraints imposed by the Due Process Clause and Article III. Absent genuine, defendant-created contacts with the forum, the exercise of personal jurisdiction is improper. The Court should decline to extend its authority beyond these constitutional boundaries.

The Supreme Court has made clear that the purposeful availment inquiry requires that "the relationship among the defendant, the forum, and the litigation must arise out of contacts that the defendant *himself* creates with the forum State." *Curry*, 949 F.3d at 396 (quoting *Burger King*, 471 U.S. at 475) (emphasis added). Accordingly, a defendant may not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id*. Consistent with this principle, the Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Additionally, the "minimum contacts" analysis requires courts to look at "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 285.

6

In *Walden*, the Supreme Court held that a Nevada court lacked personal jurisdiction over a defendant Georgia police officer where the defendant's only alleged connection to Nevada arose from the plaintiffs' unilateral activities. *Id*. at 290. There, the defendant seized cash from the plaintiffs in Georgia and advised that the funds would be returned if they were shown to have a legitimate source. *Id*. at 280. The plaintiffs thereafter traveled to Nevada, where they claimed to have suffered injury as a result of the seizure. *Id*. The Court rejected jurisdiction on that basis, explaining that the plaintiffs' inability to access their funds in Nevada was "not because anything independently occurred there," but instead stemmed from the plaintiffs' own decision to be in that forum. *Id*. at 290. The Court emphasized that the jurisdictional inquiry must focus on the defendant's own conduct, not "contacts between the plaintiff (or third parties) and the forum State." *Id*. at 284. Accordingly, the Supreme Court made clear that "[t]he proper question is not where the plaintiff experienced a particular injury or effect, but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 290.

The Supreme Court further clarified that its prior decision in *Calder v. Jones*, 465 U.S. 783 (1984), does not support an expansive theory of jurisdiction based merely on a plaintiff's forum connections. Rather, *Calder* was "largely a function of the nature of the libel tort" at issue, because "the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Walden*, 571 U.S. at 287. In *Calder*, an actress brought a libel action in California state court against a reporter and an editor based in Florida for an article published in the National Enquirer. 465 U.S. at 784–86. The Court held that the exercise of personal jurisdiction in California was consistent with due process because the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California." *Id*. at 789. The Court emphasized several critical forum-directed contacts: the article relied on California sources, concerned the activities of a

California resident, and was widely circulated in California, where approximately 600,000 copies were distributed. *Id*. at 785, 788–89. As a result, "the brunt of the harm" to the plaintiff's reputation and emotional well-being was suffered in California. *Id*. at 789.

Importantly, the Supreme Court in *Walden* distinguished *Calder* on precisely these grounds. It explained that, in *Calder*, "the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens." *Walden*, 571 U.S. at 287–88 (internal citation omitted). Because publication to third parties is an essential element of libel, the defendants' tortious conduct was inherently tied to—and indeed occurred within—the forum state. *Id*. at 288.

It was this uniquely forum-directed conduct—rather than the mere location of the plaintiff—that "sufficed to authorize the California court's exercise of jurisdiction." *Id*. Properly understood, *Calder* does not permit jurisdiction based on the plaintiff's forum connections alone; instead, it requires intentional conduct by the defendant that is expressly aimed at the forum itself.

Applying these principles, the single purchase relied upon by Stussy is insufficient to establish purposeful availment by NIOKIT. The record reflects that NIOKIT has not made meaningful sales of the accused products in the United States. Instead, the only alleged contact with Illinois is a single, plaintiff-orchestrated purchase initiated by Stussy on February 3, 2026, for delivery to an address in Illinois. *See* Xu Decl. ¶ 5; Ex. 2. Such a manufactured transaction cannot constitute a defendant-created contact with the forum. Following the initiation of this litigation, NIOKIT's entire Amazon storefront was disabled, preventing the sale of any products— whether accused or not—and effectively halting its business operations. *Id*. ¶¶ 8-9; Ex. 4. NIOKIT remains unable to resume normal operations pending resolution of this case. *Id*. ¶¶ 9. These consequences underscore the coercive effect of asserting jurisdiction based on contrived contacts,

rather than constitutionally sufficient ones.

A single, plaintiff-initiated test purchase does not demonstrate that NIOKIT purposefully availed itself of the privilege of conducting activities in Illinois. As the Supreme Court has made clear, the relevant inquiry is whether "the relationship among the defendant, the forum, and the litigation … arise[s] out of contacts that the defendant *himself* creates with the forum State." *Burger King*, 471 U.S. at 475 (emphasis added). A defendant may not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Curry*, 949 F.3d at 396.

This case closely parallels *Walden*, where the Supreme Court rejected jurisdiction based on the plaintiff's unilateral connection to the forum. The Court emphasized that "[t]he proper question is not where the plaintiff experienced a particular injury or effect, but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Here, any purported Illinois contact arises solely from Stussy's own decision to direct a test purchase into the forum—not from any deliberate conduct by NIOKIT targeting Illinois. Permitting jurisdiction on this basis would effectively allow plaintiffs to manufacture personal jurisdiction at will, subjecting foreign defendants to suit in any forum of the plaintiff's choosing. That result is incompatible with the Due Process Clause and cannot support the exercise of personal jurisdiction here.

Although the Seventh Circuit has recognized that evidence of sales into Illinois may, in appropriate circumstances, support a *prima facie* showing of personal jurisdiction, it has never held that a single, plaintiff-orchestrated transaction suffices to establish purposeful availment. To the contrary, the governing precedent underscores that jurisdiction must rest on the defendant's own deliberate, forum-directed conduct—not on contacts manufactured by the plaintiff. *Hemi*

9

*Group*, 622 F.3d at 758 (finding purposeful availment where the defendant "created several commercial, interactive websites through which customers could purchase cigarettes," "held itself out as open to do business with every state (including Illinois)," and fulfilled orders by shipping products to customers in Illinois); *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (finding personal jurisdiction lacking where the only alleged contact was "a single incident conjured up by the plaintiffs' attorney for the exclusive purpose of establishing personal jurisdiction over the defendants").

Critically, the Seventh Circuit made clear in *Hemi Group* that jurisdiction was proper because "it is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts." 622 F.3d at 758 (alteration in original). This distinction is dispositive. Where, as here, the only alleged contact arises from a plaintiff-directed test purchase, there is no evidence of the defendant "reaching out" to the forum. Instead, the contact is the product of unilateral conduct by the plaintiff—precisely the type of jurisdictional bootstrap the Supreme Court has repeatedly rejected.

If purposeful availment requires anything, it must demand that "the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. That standard cannot be satisfied by a single, litigation-driven purchase that does not reflect the defendant's ordinary business operations or any intentional targeting of the forum state. To hold otherwise would permit plaintiffs to manufacture jurisdiction in any forum of their choosing, effectively collapsing the minimum contacts analysis into a unilateral act.

Such an approach would eviscerate the constitutional limits imposed by Due Process and convert federal courts into venues of universal jurisdiction over foreign defendants. The proliferation of Schedule A actions relying on this tactic—often resulting in sweeping asset

10

restraints and default judgments—only underscores the need for careful adherence to established jurisdictional principles. This Court should decline to extend personal jurisdiction based on such contrived and constitutionally insufficient contacts.

**B.      Stussy Fails to Demonstrate That Its Claims Arise Out of or Relate to NIOKIT's Alleged Contacts with Illinois**

The second prong of the specific jurisdiction inquiry requires that the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). In other words, the defendant's contacts must be "suit-related." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden*, 571 U.S. at 284). This requirement demands a meaningful "connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). "Even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011).

Here, there are no meaningful, defendant-created contacts with Illinois to which Stussy's claims can "arise out of or relate." The record reflects no pattern of regular sales, marketing, or other purposeful activity by NIOKIT directed at Illinois—or the United States more broadly. Instead, Stussy relies solely on a single, plaintiff-orchestrated transaction in Illinois. Such an isolated and manufactured contact cannot establish the required nexus between the forum and the claims.

**C.      A Single, Plaintiff-Orchestrated Sale Cannot Satisfy Due Process Requirements for Personal Jurisdiction**

Due process requires that jurisdiction comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The exercise of

11

specific jurisdiction must align with "traditional notions of fair play and substantial justice." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). In deciding this element, courts consider factors such as "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficiently resolving controversies, and the shared interest of the states in furthering fundamental substantive social policies." *Brandon Wade Licensing, LLC v. Terezowens.com, LLC*, No. 12 C 9113, 2013 WL 1446356, at *5 (N.D. Ill. Apr. 9, 2013) (quoting *Asahi Metal Indus. Co, v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

At the threshold, however, the Supreme Court has made clear that specific jurisdiction requires "something more" than merely placing goods into the stream of commerce, and that isolated or sporadic sales are insufficient. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 888–89 (2011) (Breyer, J., concurring).

Consistent with this principle, courts have repeatedly rejected attempts to premise jurisdiction on a single, plaintiff-initiated transaction. The Eighth Circuit, for example, held that a single purchase through a generally accessible website—initiated by the plaintiff—was insufficient because such contact is "random, isolated, [and] fortuitous." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 953 (8th Cir. 2022) (internal citations omitted).

Similarly, the Third Circuit has consistently held that purposeful availment requires affirmative conduct by the defendant—not contacts "orchestrated by the plaintiff," which are, by definition, "random, isolated, or fortuitous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454–55 (3d Cir. 2003). In *Nifty Home Products, Inc. v. Ladynana US*, the Third Circuit reaffirmed that "single transactions [set up by the plaintiff in each instance], standing alone, [are] insufficient to demonstrate purposeful availment." No. 23-1332, 2024 WL 4987245, at *3 (3d Cir. 2024).

12

District courts within the Third Circuit have applied this principle with equal force. In *Philadelphia Indemnity Insurance Co. v. Dreamershop Trade Ltd.*, the court reaffirmed that personal jurisdiction cannot be premised on isolated or insufficient contacts, emphasizing the absence of defendant-directed conduct. No. 2:24-cv-1569, 2025 WL 2282567, at *3 (W.D. Pa. Aug. 8, 2025). Likewise, in *Forcel Media Ltd. v. DECI*, the court expressly rejected reliance on plaintiff-engineered transactions, holding that "[i]f [the plaintiff] or its counsel or agents simply ordered these products to create personal jurisdiction, that doesn't work." No. 2:25-cv-750, 2025 WL 1665586, at *2 (W.D. Pa. June 12, 2025). And in *In re "Schedule A" Cases*, the court cautioned against the growing practice of asserting jurisdiction over numerous online sellers without a sound jurisdictional basis, warning that "suing defendants without a sound basis as to their contacts into the forum/personal jurisdiction runs the risk of violating these defendants' due process rights." No. 2:25-cv-926, 2025 WL 1906814, at *1 (W.D. Pa. July 10, 2025).

Taken together, these authorities confirm a consistent rule: isolated transactions—particularly those manufactured by the plaintiff for purposes of litigation—do not satisfy the minimum contacts requirement. To hold otherwise would collapse the due process inquiry into a unilateral act, permitting plaintiffs to create jurisdiction at will and undermining the constitutional limits on judicial authority.

## II. RULE 4(k)(2) DOES NOT CURE THE ABSENCE OF PERSONAL JURISDICTION

For a claim that arises under federal law, serving a summons or filing a waiver of services establishes personal jurisdiction over a defendant if: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). For a district court to exercise jurisdiction based on Rule 4(k)(2), the following conditions must be present: "(1) the

13

plaintiff's claims must be based on federal law; (2) no state could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction must be consistent with the laws of the United States; and (4) the exercise of jurisdiction must be consistent with the Constitution." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000).

That condition is not satisfied here. NIOKIT is subject to personal jurisdiction in the State of Washington. NIOKIT conducts its business through Amazon pursuant to a seller agreement with Amazon.com Services LLC, a Washington-based entity. *See* Xu Decl. ¶ 2. The agreement governing NIOKIT's use of the Amazon platform—through which all U.S.-directed sales are conducted—is entered into with Amazon.com Services LLC. *See* Ex. 1 at 8. Critically, the agreement provides that it is governed by Washington law and designates the state or federal courts located in King County, Washington, as the "Governing Courts" for disputes arising under the agreement. *Id*. at 9.

By entering into this agreement, NIOKIT purposefully established a continuing commercial relationship with a Washington-based entity and affirmatively agreed to be bound by Washington law and to litigate disputes in Washington courts. This constitutes classic purposeful availment. *See Burger King*, 471 U.S. at 473 (holding that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities"); *see also id.* at 482 (holding that a choice-of-law provision should be considered in the jurisdictional analysis).

NIOKIT's contacts with Washington are neither random nor fortuitous. Rather, they arise from deliberate, repeated commercial activity conducted through a contractual relationship centered in Washington. Through that agreement, NIOKIT has availed itself of the privilege of conducting business within Washington and has invoked the benefits and protections of its laws.

14

Because NIOKIT is subject to personal jurisdiction in Washington, Rule 4(k)(2) cannot be invoked. The rule's threshold requirement—that "no state could exercise jurisdiction"—is not met. *Cent. States*, 230 F.3d at 940. Accordingly, Stussy cannot rely on Rule 4(k)(2) to cure the absence of personal jurisdiction in this Court.

## **CONCLUSION**

Personal jurisdiction remains a fundamental threshold limitation—one that safeguards the constitutional promise that a defendant will not be haled into a distant forum absent meaningful, defendant-created contacts. That protection cannot be reduced to a formality, nor can it be circumvented through contrived acts of litigation. A single, plaintiff-orchestrated purchase—manufactured solely for the purpose of creating jurisdiction—does not constitute purposeful availment. It is not the defendant reaching into the forum, but the plaintiff reaching outward and drawing the defendant in. Such unilateral conduct cannot satisfy the demands of due process.

To hold otherwise would blur the boundary between genuine jurisdiction and manufactured consent, allowing jurisdiction to arise not from a defendant's deliberate conduct, but from a plaintiff's strategic design. That is not the law—and it should not become it.

Accordingly, the Court should dismiss all claims against NIOKIT for lack of personal jurisdiction and confirm that a single, litigation-driven test purchase is insufficient to establish the constitutional minimum contacts required by Due Process.

15

March 31, 2026

Respectfully submitted,

**ANJIE BROAD LAW FIRM**

By: /s/   *Zhiyu Liang*
    Zhiyu Liang (*pro hac vice*)
    14th Floor, North Tower, Beijing
    Kerry Centre
    No. 1 Guanghua Road
    Chaoyang District, Beijing 100020,
    China
    Phone: +86 (10) 8567-5988
    Email:   liangzhiyu@anjielaw.com

**THE LAW OFFICE OF X. LYU, PLLC**

Xintong Lyu
36-36 Prince St., Flushing
New York, New York 11354
Phone: (347) 966-1978
Email: catherine.lyu@lyulawpllc.com

Jian Wang (*pro hac vice*)
36-36 Prince St., Flushing
New York, New York 11354
Phone: (347) 776-0366
Email: jwang@lyulawpllc.com

*Attorneys for Defendant NIOKIT*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 31, 2026, the foregoing MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2) was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the Court's Electronic Case Filing System, which will send notification to all attorneys of record in this case.

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

By: */s/  Zhiyu Liang*
Zhiyu Liang

17