**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| STUSSY, INC. | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 26 C 2870 |
| | ) | |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| THE PARTNERSHIPS AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE A. | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

The question before the Court is whether a foreign seller's single sale of one allegedly infringing rug into Illinois—made through Amazon.com by an order placed by Plaintiff's own investigator—is sufficient purposeful availment of the forum for the seller to be haled into court on claims arising from that sale. For the reasons below, the Court holds that it is and denies Defendant's motion to dismiss. (Dkt. 34).

**<u>BACKGROUND</u>**

Plaintiff Stussy, Inc. sued 41 seller aliases/Defendants in this Schedule A case for trademark infringement and counterfeiting under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a). (Dkt. 1 at 12-14); (Dkt. 2 at 1-2). Stussy holds many federally registered trademarks, including those for "a stylized billiard '8' ball":



1

(*Id.* at 6); *see also* U.S. Reg. Nos. 6,885,821; 7,115,443; 5,291,490. Stussy alleged that one of the Defendants—NIOKIT—sells rugs allegedly infringing Stussy's federally registered trademarks:



(Dkt. 3 at 64). Stussy's investigator purchased this allegedly infringing rug; Defendant NIOKIT accepted the offer and payment; and it shipped the rug to Stussy's attorney's office in Chicago. (*Id.* at 66); (Dkt. 56, ¶ 4); (Dkt. 35, ¶ 5). To stop the ongoing infringing, Stussy moved for, and the Court granted, an *ex parte* temporary restraining order. (Dkt. 27). Stussy then moved for a preliminary injunction. (Dkt. 36).

The same day Stussy moved for a preliminary injunction, NIOKIT filed an appearance and moved to dismiss for lack of personal jurisdiction. (Dkts. 32-37). NIOKIT answered Stussy's complaint (denying that the Court held jurisdiction over it). (Dkt. 41, ¶¶ 1-2). NIOKIT did not, however, contest Stussy's motion for preliminary injunction, which the Court granted (Dkt. 45); instead, NIOKIT filed the instant motion to dismiss for lack of jurisdiction. (Dkt. 34).

## LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction, the Court accepts "the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022) (quoting *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010)). The plaintiff "bears the burden of demonstrating the existence of jurisdiction.'" *Id.* (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When the Court rules on a "defendant's motion to dismiss" for lack of personal jurisdiction

2

"without the benefit of an evidentiary hearing," the plaintiff need only show "a prima facie case for personal jurisdiction." *Id.* (quotes omitted) (quoting *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020)). The Court "may consider affidavits on the issue of personal jurisdiction; both parties' affidavits are accepted as true, and where they conflict, the plaintiff is entitled to resolution in its favor." *Id.*

## DISCUSSION

NIOKIT raises four overarching arguments why the Court lacks specific personal jurisdiction. (Dkt. 34). The first is that Stussy failed to show that NIOKIT has purposefully availed itself to the forum. (*Id.* at 9-15). Next, NIOKIT claims that Stussy failed to show that its claims arise out of or relate to NIOKIT's alleged contacts with the forum. (*Id.* at 15). NIOKIT's third argument is that a single, plaintiff-orchestrated sale does satisfy the due process requirements necessary to establish personal jurisdiction. (*Id.* at 15-17). Finally, NIOKIT asserts that Federal Rule of Civil Procedure 4(k)(2) does not establish personal jurisdiction here. (*Id.* at 17-19). Stussy responds that personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(1) (*see* Dkt. 55 at 6-10) and, alternatively, that personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2). (*Id.* at 10-13). Both parties filed declarations in support of their positions (*see* Dkts. 35, 56), and NIOKIT filed a reply, addressing Stussy's primary two arguments and reaffirming its initial positions. (Dkt. 57).

To establish specific personal jurisdiction, the "focus is on the contacts that the defendant itself created with the forum state; the defendant cannot be 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *NBA,* 46 F.4th at 623-24 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). There are three requirements for specific personal jurisdiction:

3

> First, the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state. Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Id.* at 623 (quoting *Curry*, 949 F.3d at 398); *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019).

## I. Purposeful Direction

NIOKIT repeatedly emphasizes that "a single, plaintiff-orchestrated purchase initiated by Stussy" cannot "establish purposeful availment" because it is a "manufactured" and "contrived" transaction. (Dkt. 34 at 12); (*see also id.* at 9-19); (Dkt. 57 at 4-13). NIOKIT asserts that a "single, plaintiff-initiated test purchase does not demonstrate that NIOKIT purposefully availed itself of the privilege of conducting activities in Illinois." (*Id.* at 13). The facts here and all of NIOKIT's arguments are virtually identical to those in *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 627 (7th Cir. 2022). Just like here, the Schedule A defendant in *NBA* contended that "it lacked any connections with Illinois other than the 'sham' transaction initiated by NBA Properties." *Id.* at 618. The defendant there also argued that it never purposefully directed any activities to Illinois because plaintiff "manufactured jurisdiction by having its agent purchase the infringing product." *Id.* at 624. The Seventh Circuit squarely rejected these positions. *Id.* Bound by that decision, the Court finds that NIOKIT's arguments are meritless. *Id.*

NIOKIT's "actions certainly can be characterized as purposeful. It established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so. When an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address." *Id.* at 624. NIOKIT also "overlooks that, in assessing purposeful direction, what

matters is its structuring of its own activities so as to target the Illinois market"; whatever Stussy's "motivations in purchasing the allegedly illegal item are in no way relevant to . . . whether [NIOKIT] has established sufficient contacts to sell its products to Illinois residents." *Id.* What is more, Stussy was required to show actual sales. *Hublot SA v. Partnerships & Unincorporated Associations Identified on Schedule A*, 2026 WL 1383202, at *2 (N.D. Ill. May 18, 2026) (collecting case law explaining that evidence of actual sales is required).

Nearly all of NIOKIT's arguments rest on a misapplication of how the Court analyzes contacts for personal jurisdiction. (*See* Dkts. 34, 57); *compare with NBA*, 46 F.4th at 623. NIOKIT recites that "[t]he Supreme Court has made clear that the purposeful availment inquiry requires that 'the relationship among the defendant, the forum, and the litigation must arise out of contacts that the defendant ***himself*** creates with the forum State.'" (Dkt. 34 at 10) (quoting *Curry*, 949 F.3d at 396). True, but then NIOKIT proceeds to fixate on Stussy's actions—like buying the rug—while ignoring its own conduct directed at Illinois. (*See* Dkts. 34, 57). The inquiry is not why Stussy purchased NIOKIT's allegedly infringing rug; it is whether NIOKIT "'purposefully directed' [its] activities at [the] forum." *Curry*, 949 F.3d at 398; (quoting *Burger King*, 471 U.S. at 476). NIOKIT clearly did. NIOKIT intentionally caused "its product to be distributed in the forum state." *Id.*; (Dkt. 35, ¶ 5) (admitting to selling, shipping, and delivering product to Illinois); (Dkt. 56, ¶ 4) ("Plaintiff's investigators ordered Defendant's Counterfeit Product, entered an Illinois shipping address . . . and paid for the Counterfeit Product. Plaintiff's investigators received an order confirmation, which included an estimated delivery date . . . . The Counterfeit Product was delivered to the Illinois shipping address during that timeframe . . . .").

Despite binding precedent foreclosing NIOKIT's position, it repeatedly asserts that "a single, litigation-driven purchase . . . does not reflect the defendant's ordinary business operations

5

or any intentional targeting of the forum state"; and, it further asserts that, to "hold otherwise would permit plaintiffs to manufacture jurisdiction in any forum of their choosing, effectively collapsing the minimum contacts analysis into a unilateral act." (Dkt. 34 at 14); (*see also id*. at 5-7, 9-17, 19). Not so. NIOKIT's attempt to describe its own "act of filling [Stussy's] order as" ***Stussy's*** "unilateral act . . . is a mischaracterization. Here, [***NIOKIT***] shipped a product to the forum only after it had structured its sales activity in such a manner as to invite orders from Illinois and developed the capacity to fill them. It cannot now point to its 'customers in Illinois and tell us, "It was all their idea.""" *NBA*, 46 F.4th at 625 (quoting *uBID*, 623 F.3d at 428). This position is also "misleading" because it was NIOKIT that "took significant steps both before and after sales" to effectuate the transition. *uBID*, 623 F.3d at 428 (quoting *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758-59 (7th Cir. 2010)). Ultimately, NIOKIT "wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure." *Hemi*, 622 F.3d at 760.

## II.      Relatedness

NIOKIT's only argument against the arising out of or relating to Illinois requirement is its unsupported assertion that it has "no meaningful, defendant-created contacts with Illinois" because the "record reflects no pattern of regular sales, marketing, or other purposeful activity by NIOKIT directed at Illinois" save the "single, plaintiff-orchestrated transaction in Illinois." (Dkt. 34 at 15).

NIOKIT sold, shipped, and delivered an allegedly infringing rug into Illinois. *Supra* at 1-2. Stussy claims that the rug infringes its trademark. *Id.* Stussy's claim is "suit-related" and arises directly from NIOKI's contacts with Illinois. *Id.* This satisfies Stussy's burden as "[t]his requirement is met when direct sales from the defendant in the forum state involve the infringing product." *NBA*, 46 F.4th at 625 (quoting *Curry*, 949 F.3d at 400-02).

## III.      Traditional Notions of Fair Play & Substantial Justice

6

NIOKIT contends that it would violate due process for the Court to exercise jurisdiction over it because its only contact with Illinois is an "isolated transaction[]" "manufactured by the plaintiff for purposes of litigation." (Dkt 34 at 17). Relying on Third and Eighth Circuit cases, NIOKIT contends that "these authorities" "confirm" that "plaintiff-engineered transactions" and "contacts orchestrated by the plaintiff" "do not satisfy the minimum contacts requirement." (*Id.* at 15-17) (quotes omitted). NIOKIT warns that if the Court holds otherwise, plaintiffs could "create jurisdiction at will." (*Id.* at 17).

Decisions from the Third and Eighth Circuit are not binding on this Court. Nor are they persuasive when there is contrary factually identical binding Seventh Circuit precedent at hand. *See NBA*, 46 F.4th at 627; *Curry*, 949 F.3d at 402; *uBID*, 623 F.3d at 432; *Hemi*, 622 F.3d at 760.

The Court considers several factors to determine whether it is fair to exercise jurisdiction over a defendant. *Id.* (listing factors). NIOKIT addresses none. It matters not. NIOKIT was sued in Illinois because it offered its products for sale on Amazon.com and in fact sold those products into Illinois. *Supra* at 1-2. When the opportunity arose for NIOKIT to decide whether to accept a customer's money, finalize the order, and ship its product to Illinois, NIOKIT took the money and shipped the rug. *Id.* That was NIOKIT's decision. *Id.* Because NIOKIT chose to sell rugs in Illinois that are accused of infringing another entity's federally registered trademark, NIOKIT must defend its conduct in this Court. *Id.* It is patently fair for the Court to exercise jurisdiction over NIOKIT. *See NBA*, 46 F.4th at 627; *Curry*, 949 F.3d at 402; *uBID*, 623 F.3d at 432; *Hemi*, 622 F.3d at 760.

True that NIOKIT has no physical presence in Illinois, but that is far from dispositive. *Id.* at 624. It has alleged "no unusual burden in defending the suit in Illinois." *Id.* at 627. Furthermore, Stussy bears an affirmative duty to police its marks and so it possesses a keen interest in ensuring no allegedly infringing goods are offered for sale or sold in Illinois. *See* 15 U.S.C. § 1064; 15

7

U.S.C. § 1127; *see also Georgia Carpet Sales, Inc. v. SLS Corp.*, 789 F. Supp. 244, 245 (N.D. Ill. 1992) ("the Lanham Act places an affirmative duty upon a licensor of a registered trademark to take reasonable measures to detect and prevent misleading uses of his mark by his licensees or suffer cancellation of his federal registration"). Illinois shares an equally important interest in ensuring that its citizens are not subjected to counterfeit or infringing goods. *NBA*, 46 F.4th at 627 ("Illinois no doubt has an interest in protecting its consumers from purchasing fraudulent merchandise.").

NIOKIT raises a few additional arguments urging the Court to decline to exercise jurisdiction. NIOKIT laments the impact this case has caused its business, repeatedly noting that its online Amazon.com account has been shut down. (*See, e.g.*, Dkt. 34 at 5, 7, 9, 10, 12). The time to press that argument has passed. NIOKIT could have—but chose not to—challenge Stussy's motion for preliminary injunction. *Supra* at 1-2. While no doubt its account was initially frozen from the *ex parte* temporary restraining order, NIOKIT took no action—and still has not. *Id.* Any party selling goods bears the risk of litigation when they sell goods that may infringe the intellectual property rights of others. These equitable grievances have no bearing on the jurisdictional question before the Court.

NIOKIT asserts that this "case closely parallels *Walden*, where the Supreme Court rejected jurisdiction based on the plaintiff's unilateral connection to the forum." (Dkt. 34 at 13) (citing *Walden v. Fiore*, 571 U.S. 277 (2014)). Not quite. The Court's jurisdiction over NIOKIT is not based on Stussy's connection to Illinois, but NIOKIT's sale and shipment of allegedly infringing goods into Illinois. *Supra* at 1-2; *compare Walden*, 571 U.S. at 289 with *NBA*, 46 F.4th at 624. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

NIOKIT knowingly offered for sale goods into Illinois, and, when presented with an opportunity to sell those goods in Illinois, accepted legal tender and fully effectuated the sale, shipment, and delivery to a customer in Illinois. *Id.*; *supra* at 1-2. That suffices for personal jurisdiction. *Id.* Again, whatever Stussy's "motivations in purchasing the allegedly illegal item are in no way relevant to an assessment of whether [NIOKIT] has established sufficient contacts to sell its products to Illinois residents." *NBA,* 46 F.4th at 624.

On reply, NIOKIT pivots to framing this case as one where NIOKIT merely placed one product into the "stream of commerce." (Dkt. 57). This is not a stream of commerce case. NIOKIT put its goods on Amazon.com and sold them directly to Illinois. Any reliance on the stream of commerce line of law is misplaced; this case falls under the purview of the direct-to-consumer scenario the court in *NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) addressed. (*See also* Dkt. 57 at 4-10).[1]

NIOKIT argues that *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) forecloses Stussy's position (that jurisdiction is proper under *NBA*). (Dkt. 57 at 6-12). NIOKIT extracts from Justice Breyer's concurrence the principle that "isolated or fortuitous contacts—such as a single product reaching the forum through the stream of commerce—are insufficient to establish purposeful availment." (*Id.* at 11) (citing *McIntyre*, 564 U.S. at 886, 888-89). This suffers from several problems. First, *NBA* was decided after *McIntyre*, so to the extent NIOKIT is contending that the court's decision in *NBA* is at odds with *McIntyre*, it has failed to make that showing. (*Id.*) Second, *McIntyre* was a stream of commerce case, with distinguishable facts; there, a British manufacturer sold a product to an independent distributor in the United States who then

---

[1] Much of NIOKIT's reply continues to fixate on Stussy's motivation for purchasing NIOKIT's rug. The Court need not address these arguments again because a customer's motivation for purchasing a product is not relevant to the personal jurisdiction inquiry. *NBA*, 46 F.4th at 624.

unilaterally sold the goods into a state where the injury occurred (a state J. McIntyre had virtually no contacts with). *McIntyre*, 564 U.S. at 877. Despite this, NIOKIT plucks a few lines from that fractured opinion for the bright line rule that "a single product" from "a lone, manufactured transaction" is insufficient as a matter of law to establish personal jurisdiction. (Dkt. 57 at 11). "[T]he Supreme Court has warned explicitly" that the Court "must avoid" "'talismanic jurisdictional formulas'" as they "are not an acceptable instrument in the toolbox of a court assessing personal jurisdiction." *NBA*, 46 F.4th at 624-25 (quoting *Burger King*, 471 U.S. at 485)). In other words, NIOKIT's position contending that the Supreme Court adopted a brightline number necessary for jurisdiction is directly contradicted by the Supreme Court warning against doing just that. *Id.*

Finally, NIOKIT urges the Court to find that *NBA*, *Hemi*, and *Curry* are distinguishable and in fact require a plaintiff to show more than one sale into the forum to establish jurisdiction. (*See* Dkt. 57 at 9-11). They do not. "Such a categorical rule would be unsound, and such a practice has been discouraged by the Supreme Court." *NBA*, 46 F.4th at 624; *Burger King*, 471 U.S. at 485-86. NIOKIT similarly asks the Court to read *Matlin v. Spin Master Corp.*, 921 F.3d 701 (7th Cir. 2019) as standing for the brightline rule that a single incident is insufficient for jurisdiction. (*See* Dkt. 57 at 9-11). "*Matlin* hardly establishes a categorical rule that multiple online sales, as opposed to a single online sale, are required to establish a sufficient basis for personal jurisdiction. In *Matlin*, personal jurisdiction was improper because the sale was unrelated to the litigation and occurred after the case was filed." *NBA*, 46 F.4th at 625.

The Court finds that NIOKIT's positions are virtually identical to those the Seventh Circuit considered and rejected in *NBA*. NIOKIT knowingly offered for sale, sold, and successfully delivered an allegedly infringing rug into Illinois. The Court may exercise personal jurisdiction

10

over it; and so the Court need not address the parties' remaining arguments or those concerning

Federal Rule of Civil Procedure 4(k). (*See* Dkt. 34 at 17-19); (Dkt. 55); (Dkt. 57 at 12-13).

## CONCLUSION

The Court denies Defendant's motion to dismiss. (Dkt. 34).

_____
Virginia M. Kendall
United States District Judge

Date: June 1, 2026

11