**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STUSSY, INC. | ) | |
| *Plaintiff*, | ) | No. 26 C 2870 |
| v. | ) | Chief Judge Virginia M. Kendall |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A. | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

The parties have been embroiled in motions practice since Defendant Niokit appeared in this Schedule A case. There are four pending motions before the Court. Niokit moves to vacate the preliminary injunction (Dkt. 71) and for reconsideration of the Court's order granting expedited discovery. (Dkt. 75). Plaintiff Stussy, Inc. moves for attorney's fees (Dkt. 89) and to dismiss Niokit's counterclaims. (Dkt. 93). For the reasons below, the Court denies Niokit's Motion to Vacate the Preliminary Injunction (Dkt. 71), grants in part Niokit's Motion for Reconsideration of the Court's Order Granting Expedited Discovery (Dkt. 75), denies Stussy's Motion for Attorney's Fees (Dkt. 89), and grants in part Stussy's Motion to Dismiss Niokit's Counterclaims. (Dkt. 93).

**BACKGROUND**

Stussy alleges to be the owner of many trademarks. (Dkt. 1, ¶¶ 12-13). Stussy filed its complaint against numerous defendants—all online sellers of products Stussy alleges infringe its trademarks. (Dkts. 1, 2). One of those Defendants is Niokit, an online seller who allegedly sells rugs—bearing an allegedly infringing image of an eight-ball logo—on Amazon. (Dkt. 2, ¶ 20); (Dkt. 19 at 64-66).

## DISCUSSION

### I. Injunction

The Court entered a temporary restraining order on March 24, 2026. (Dkt. 27). This was unopposed because Stussy sought it *ex parte*—as is the norm in every Schedule A case. Niokit appeared on March 30, 2026. (Dkt. 31); (*see also* Dkts. 32, 33). Stussy moved for a preliminary injunction the next day. (Dkt. 36). The Court held a hearing on April 7, 2026, over Stussy's motion for a preliminary injunction. (Dkt. 44). Niokit did not appear nor challenge the injunction during the hearing. (*Id.*) At no point prior to the hearing did Niokit challenge the injunction—despite filing a motion to dismiss and an answer to the complaint. (Dkts. 31, 34, 41). The Court granted Stussy's motion and entered the preliminary injunction on April 7, 2026. (Dkt. 45). Over two months later, Niokit filed a Motion to Vacate the Preliminary Injunction. (Dkt. 71).

In support of its Motion to Vacate the Preliminary Injunction, Niokit asserts that Stussy cannot show irreparable harm because Stussy's only evidence relating to Niokit was a single litigation-driven purchase. (*Id.* at 1-2). It contends that Stussy provided no evidence of trademark infringement, such as consumer confusion or lost goodwill, sales, customers, or market share. (*Id.* at 2). Niokit further claims that Stussy hinges its position on the Lanham Act's presumption of irreparable harm under 15 U.S.C. § 1116(a), but that this is insufficient. (*Id.*) Niokit's last two arguments are that the equities and the public interest warrant vacatur. (*Id.* at 3-4).

"Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, 'applying the judgment or order prospectively is no longer equitable.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (brackets omitted) (quoting Fed. R. Civ. P. 60(b)(5)). "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify

or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Id.* (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief," "but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction . . . in light of such changes." *Id.* (cleaned up).

Niokit comes nowhere close to satisfying its burden. It presents no evidence. (Dkt. 71). It rests entirely on legal (and attorney) argument. (*Id.*) Indeed, Niokit's last two positions are sheer attorney argument. (*Id.*) Niokit also fails to cite the controlling standard or applicable law. (*Id.*) Far from detailing a "significant change either in factual conditions or in law," Niokit relies on the very conditions present when the Court entered the injunction as the basis for vacating it now. *Horne*, 557 U.S. at 447; (Dkt. 71) (relying on the fact that Stussy's basis for jurisdiction was its litigation-driven purchase of a single Niokit product). Niokit raises new arguments on reply, the Court declines to consider these because "arguments raised for the first time in a reply brief are waived." *Khanna v. Banks*, 2026 WL 2836748, at *9 n.7 (N.D. Ill. Sept. 22, 2026) (quoting *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020)); *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 515 (7th Cir. 2024).[1] Niokit repeatedly stresses the position that Stussy cannot establish irreparable harm by invoking 15 U.S.C. § 1116(a) and that the "undisputed evidence rebuts the presumption" § 1116(a) provides. (Dkt. 86 at 7-13). Niokit's position is

[1] *See also United States v. Timothy Holmes*, 2026 WL 3181520, at *6 (N.D. Ill. Oct. 23, 2026) (declining to consider arguments raised for the first time on reply); *Gonzalez v. Vill. of Summit*, 2026 WL 2517227, at *4 n.1 (N.D. Ill. Aug. 26, 2026) ("waiting until the reply brief to raise" an argument results in waiver) (quoting *United States v. Garibay*, 621 F. App'x 843, 847 (7th Cir. 2015)); *Palacios v. City of Joliet*, 2026 WL 1855869, at *4 (N.D. Ill. June 29, 2026) (raising arguments for the first time on reply results in waiver); *Allen v. Casper*, 2026 WL 674309, at *5 (N.D. Ill. Mar. 10, 2026) (explaining that "a litigant may waive an issue or argument in many ways") (quotes omitted) (cleaned up); *Bakov v. Consol. World Travel, Inc.*, 2026 WL 810913, at *14 (N.D. Ill. Mar. 24, 2026) (failing to raise an argument results in waiver).

unfounded. It presents *no* evidence showing a "significant change either in factual conditions or in law." *Horne*, 557 U.S. at 447; (Dkt. 71). Compounding the issues, all of Niokit's arguments are untimely and irrelevant. The Court entered the injunction months ago, the time for Niokit to challenge the injunction was April. *Supra* at 1-2 Instead of challenging Stussy's motion, Niokit decided to move to dismiss and answer Stussy's complaint. *Id.* It cannot claim the evidence Stussy submitted then is insufficient now. As neither properly presented as a motion for reconsideration nor vacatur under Rule 60(b)(5), Niokit's Motion amounts to little more than a rehash of rejected attorney argument. (Dkt. 71). Wholly lacking support in both fact and law, Niokit's Motion to Vacate the Preliminary Injunction is denied. (*Id.*)

## II. Expedited Discovery

Niokit filed a motion asking the Court to reconsider its ruling granting expedited discovery and to stay any expedited discovery. (Dkt. 75). Niokit lists the standard for reconsideration under Federal Rule of Civil Procedure 54(b) but presents no argument concerning "manifest errors of law or fact or . . . newly discovered evidence." *Patrick v. Fuelling*, 2026 WL 2350141, at *3 (N.D. Ill. Aug. 13, 2026) (quoting *Eberhardt v. Walsh*, 122 F.4th 681, 688 (7th Cir. 2024)); (*see also* Dkt. 75 at 8-18). The Court therefore understands Niokit to be requesting reconsideration under its "'sweeping'" "discretion to reconsider an order under Rule 54(b)." *Koumjian v. Mudd*, 2024 WL 3983329, at *2 (7th Cir. Aug. 29, 2024) (quoting is *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012)). Niokit also seeks a stay of discovery. (Dkt. 75 at 8-18). "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Niokit's arguments in support of a stay of discovery are, in substance, just grievances about Stussy's broad and abusive discovery. (Dkt. 75 at 8-18). Niokit raises the issue of protective orders and asks the Court to end Stussy's grant of expedited discovery

so that the parties can proceed under the proscriptions of Federal Rule of Civil Procedure 26. (Dkt. 75 at 8, 15-18). Properly understood, this is the actual substantive relief Niokit seeks—even if its motion title and legal standard sections are askew. The Court therefore proceeds to determine whether to end the expedited discovery and to impose a protective order.

Stussy represented to the Court that its request for expedited discovery was "limited to what is essential to prevent further irreparable harm," to "identify names and financial accounts Defendants use for their operations" because, without this information, "Stussy's asset restraint may have little meaningful effect." (Dkt 16 at 15). Stussy's request was limited to freezing Defendants' accounts. (*Id.*); (*see also* Dkt. 37). The Court' granted Stussy's request in view of these representations, and Stussy presented the Court with a proposed order that contained the following language:

> Stussy is authorized to issue expedited written discovery, pursuant to Federal Rules of Civil Procedure 33, 34 and 36, related to:
>
> a. the identities and locations of Defendants, their affiliates, officers, agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information, including any and all associated e-mail addresses; and
>
> b. the nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the Online Marketplaces and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Online Marketplaces.
>
> Stussy is authorized to issue any such expedited discovery requests via e-mail. Defendants shall respond to any such discovery requests within three (3) business days of being served via e-mail.

(Dkt. 27, ¶ 6); (Dkt. 45, ¶ 6) (same scope in preliminary injunction order). Read literally, there is no question the scope of this language sweeps broader than what Stussy represented to the Court

it needed the expedited discovery for. The "nature of Defendants' operations" could engulf virtually everything about a company. Reading Stussy's discovery requests, it was seeking to do just that. (*See* Dkt. 76-1 *through* Dkt. 76-8). As just two examples, Interrogatory No. 5 seeks a full "listing of product identification numbers, item titles, and shipping state and country for each product sold to the United States" and Request for Production No. 10 seeks all documents and information "relating to [Niokit's] contracts with third parties to sell and ship Accused Products into the United States[.]" (Dkt. 76-3 at 7-8); (Dkt. 76-2 at 11-12). These requests far exceed what Stussy represented to the Court and what is necessary for securing as asset freeze here.

The Court granted Stussy's request for expedited discovery "limited" to its discrete request to ensure that it could secure the asset restraint—no more. The chain of events behind the scenes is troubling. Stussy represented that, "[s]ince entry of the TRO, third party platforms have identified financial accounts linked to the Seller Aliases which were offering for sale and/or selling Counterfeit Products." (Dkt. 37 at 4). Further confirming the limited purpose of the expedited discovery, Stussy represented that converting the TRO into a preliminary injunction remained necessary because "[w]ithout a preliminary injunction, Defendants are likely to transfer financial assets to offshore accounts, and frustrate Plaintiff's ability to pursue an accounting of profits." (*Id.*) If these statements are true, the need for expedited discovery ended. Yet, Stussy pressed on seeking it. Stussy cannot square these representations against its discovery conduct. It strikes the Court that Stussy misrepresented the purpose of the discovery, exploited the breadth of the order, and pursued full-scale merits discovery. This violates the Court's order.

"Trial courts retain broad discretion to limit and manage discovery under Rule 26 of the civil rules." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017) (cleaned up); *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 602 (7th Cir. 2024); Fed. R. Civ. P.

26(c)(1), (d)(1), (f). "[E]xpedited discovery is unusual, and the party seeking expedited discovery has the burden of establishing good cause for such a need." *Henderson v. Zam's Hope Cmty. Ctr.*, 2026 WL 3168633, at *1 (N.D. Ill. Oct. 22, 2026) (quotes omitted). "In deciding a motion for expedited discovery, courts consider: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery sought; (3) the purpose of requesting expedited discovery; (4) the burden on the opposing party to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (quotes omitted). Stussy misrepresented its basis for securing the expedited discovery order. It violated the order by seeking overly broad and abusive merits discovery from Niokit. It put undue burden on Niokit. All the while Niokit's assets remain frozen. There is no basis for any continued expedited discovery. *Id.*; (Dkt. 76).

The April 7, 2026, order is hereby amended by deleting paragraph 6 and ending all expedited discovery. (Dkt. 45). To the extent any aspect of the April 7, 2026, order conflicts with this Order, this Order controls. The parties are now proceeding under standard discovery practices pursuant to Federal Rule of Civil Procedure 26. The parties are ordered to hold their Rule 26(f) conference within two weeks of this Order. After the parties hold their Rule 26(f) conference, Niokit shall have the normal twenty-one days to respond to Stussy's requests (to the extent necessary), but not under an expedited basis. To the extent the Rule 30(b)(6) deposition has not been taken, it is hereby stricken to be rescheduled at a mutually agreeable date later in discovery. The parties are reminded that they must follow the Court's Standing Order and the Local Rules.[2] "This Court requires strict compliance with [its] local rules." *Khanna*, 2026 WL 2836748, at *15 (cleaned up). Any filings that fail to comply will be summarily stricken. Repeated failures to follow the Court's orders will subject the parties to sanctions. *See id.* ("Khanna is ordered to show cause

[2] *See* Chief Judge Kendall Standing Order (https://www.ilnd.uscourts.gov/judge_display.php?LastName=Kendall); Local Rules 26.1, 37.2

why he should not be sanctioned up to $75,000" and "is ordered to pay all of Banks' attorneys' fees, litigation costs, and associated expenses related to this lawsuit from December 19, 2023, until the present"); *Das v. Tata Consultancy Servs., Ltd.*, 2026 WL 2935334, at *5-9 (N.D. Ill. Sept. 30, 2026) (enforcing strict adherence and sanctioning party for filing frivolous motions); *Jones v. City of Evanston*, 2026 WL 2906406, at *3 (N.D. Ill. Sept. 28, 2026) (enforcing strict adherence to the Court's Standing Order and the Local Rules).

## III. Attorneys' Fees

Niokit filed a motion to dismiss for lack of personal jurisdiction on March 31, 2026. (Dkt. 34). It presented a "fundamental question of constitutional limits: whether a single, litigation-driven test purchase—engineered by [Stussy]—can satisfy the Due Process Clause's requirement of minimum contacts." (*Id.* at 5). The Court denied Niokit's motion. (Dkt. 69). "The Court [found] that NIOKIT's positions [were] virtually identical to those the Seventh Circuit considered and rejected in" *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 627 (7th Cir. 2022). (*Id.* at 10). Unable to escape the scope of *NBA*, the Court found the remainder of Niokit's constitutional challenges and additional arguments unpersuasive. (*See generally id.*). Stussy now seeks $8,213.50 in fees because it asserts that Niokit violated Federal Rule of Civil Procedure 11(b)(2) because "the exact arguments in [Niokit's] Motion were rejected by the Seventh Circuit in *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022), which [Niokit] did not cite or apply." (Dkt. 89 at 1). Niokit maintains that its positions were well researched, non-frivolous, and, while rejected by the Court, permissible attempts to extend, modify, or reverse existing or establish new law. (Dkt. 96).

"By presenting to the court a . . . written motion . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law

or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

Niokit's motion encroaches on but does not violate Rule 11(b)(2). To be sure, Niokit took an aggressive and narrow read of Seventh Circuit precedent, but its positions were well-researched and non-frivolous. (Dkts. 34, 96). However, and a very large however at that, it is quite troubling that Niokit failed to raise *NBA* in its motion. "Lawyers are not entitled to ignore controlling, adverse precedent." *Jackson v. City of Peoria, Illinois*, 825 F.3d 328, 331 (7th Cir. 2016). Niokit points out that it addressed *NBA* in its response to Stussy's Rule 11 letter and its reply to Stussy's response. (*See* Dkts. 96, 96-1, 96-2). That sidesteps the issue. "While a party may argue in good faith for the inapplicability, modification, or reversal of existing authority, it nonetheless has a duty to acknowledge and grapple with such authority. Pretending the authority does not exist in hopes that the court will overlook it is never the appropriate course." *Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 542 (7th Cir. 2017). Failing to raise *NBA* (and other adverse authorities) in its motion was a serious shortcoming for Niokit and the Court admonishes Niokit for this conduct. Despite this violation, Niokit ekes by without sanctions as its positions do not violate Rule 11.

For starters, despite Stussy's contentions to the contrary, there is nothing showing that Niokit filed its motion "for the improper purpose of driving up litigation fees." (Dkt. 89 at 1). "A paper 'interposed for any improper purpose' is sanctionable whether or not it is supported by the facts and the law[.]" *Khanna*, 2026 WL 2836748, at *18 (quoting *Eberhardt v. Walsh*, 122 F.4th 681, 686 (7th Cir. 2024)). Examples of improper purposes are to harass or needlessly drive-up litigation costs. *See generally id.* (discussing vindicative litigation). There is no evidence of that in the record. Niokit's positions challenged whether the Court possessed personal jurisdiction over it based solely on a single litigation driven purchase. (Dkt. 34). In the eyes of some, perhaps, this

may seem unfair; Niokit took this view, raising due process and constitutional challenges to the Court's jurisdiction. (*Id.*) While none of those positions prevailed, presenting an aggressive, narrow, or difficult legal position that the Court ultimate rejects is not *ipso facto* sanctionable under Rule 11. *Mazurek v. Metalcraft of Mayville, Inc.*, 110 F.4th 938, 946 (7th Cir. 2024).

The other thing setting Niokit beyond the bounds of Rule 11 is that its positions—while rejected under *NBA*—were not frivolous. Determining personal jurisdiction is not a bright line process. "[T]he Supreme Court has warned explicitly" that the Court "must avoid" "'talismanic jurisdictional formulas'" as they "are not an acceptable instrument in the toolbox of a court assessing personal jurisdiction." *Stussy, Inc. v. Partnerships & Unincorporated Associations Identified on Schedule A.*, 2026 WL 1536818, at *4 (N.D. Ill. June 1, 2026) (quoting *NBA*, 46 F.4th at 624-25). Indeed, "the facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485-86 (1985) (cleaned up). Niokit sought to do just that, but ultimately failed to distinguish *NBA* (at least implicitly at first) or reframe the question as a stream of commerce issue. (Dkt. 34). Furthermore, the research and effort behind Niokit's positions provides additional buffer against sanctions. Had Niokit filed a rote, unsupported, motion lacking law or reasoning, sanctions surely would have followed. *See Mazurek*, 110 F.4th at 946; *see also Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020) (upholding sanctions against a party that took a position "disregarding what anyone having taken a first-year contracts class could identify as the pivotal legal issues"). It did not. Stussy's Motion for Attorney's Fees is denied. (Dkt. 89). The parties are admonished that the Court's ruling here is narrow. Continued failure to address adverse case law will not be tolerated.

## IV. Counterclaims

Niokit has three counterclaims. First, cancellation of U.S. Trademark Registration Nos. 6,885,821, 7,115,443, and 5,291,490 under 15 U.S.C. §§ 1064 and 1119 for ornamentality and failing to function as a trademark. (Dkt. 82 at 12-13). Second, cancellation of U.S. Trademark Registration Nos. 6,885,821, 7,115,443, and 5,291,490 under 15 U.S.C. §§ 1064 and 1119 for lacking distinctiveness. (*Id.* at 13-15). Third, unfair competition under Illinois common law and 815 ILCS 510/2. (*Id.* at 15-16). Stussy moves to dismiss Niokit's three counterclaims. (Dkt. 93).

Stussy first asserts that Niokit's counterclaims arise under the Declaratory Judgment Act and must be dismissed because that Act creates no independent cause of action. (*Id.* at 2-3). It next asserts that Counts I and II are duplicative. (*Id.* at 3-4). It continues that Niokit's allegations for Counts I and II are insufficient to state a claim because they lack "specific facts or allegations as to the specific trademark registrations listed or any of the specific goods covered by each registration." (*Id.* at 4); (*see also id.* at 4-7) (remainder of arguments contending that Niokit's allegations are conclusory, generalized, and implausible). Stussy also notes that Reg. No. 5,291,490 is incontestable and thus the claims against it must fail. (*Id.* at 4). Stussy's last arguments are that its actions are protected under the *Noerr-Pennington* doctrine and that Niokit failed to plead unfair competition under Illinois law. (*Id.* at 7-11). The Court addresses each in turn.

A motion to dismiss counterclaims is governed by the same standard as a motion to dismiss a complaint. *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). The Court accepts "all well-pleaded allegations in the counterclaim as true and draw[s] all reasonable inferences in favor of the counterclaim plaintiff." *Id.*; *Miao v. United Airlines, Inc.*, 164 F.4th 622, 623 (7th Cir. 2026). The counterclaim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quotes omitted). "This means that the [counterclaim] must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will "not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quotes omitted).

The Declaratory Judgment Act does not create an independent cause of action. The "operation of the Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Because "the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction . . . the district court must possess an independent basis for jurisdiction." *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995); *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 n.2 (7th Cir. 2019); *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009); 28 U.S.C. § 2201. Stussy stresses this point. (Dkt. 93 at 2-3). It is irrelevant. Niokit does not bring a standalone claim under the Declaratory Judgment Act. (Dkt. 82). Niokit asserts three Counts: the first under 15 U.S.C. §§ 1064, 1119; the second under 15 U.S.C. §§ 1064, 1119; and the third under Illinois Common Law and 815 ILCS 510. (*Id.* at 12-16). To be sure Niokit seeks declaratory relief (*see, e.g.*, *id.* at 8-9, 17-18); but it "does not matter that [Niokit] seeks declaratory, rather than monetary, relief" because "[d]eclaratory relief 'presupposes the existence of a judicially remediable right' and thus cannot be pursued without a predicate right of action." *Alarm Detection*, 929 F.3d at 871 n.2. Niokit alleges standalone claims under federal statute. (Dkt. 82 at 12-16). This forecloses Stussy's arguments.

Stussy's next argument—that Niokit's Counts I and II are duplicative with Stussy's complaint—is a nonstarter. (Dkt. 93 at 3). Stussy asserts that Niokit's Counts are "duplicative" because "they request a declaratory judgment of non-infringement and unenforceability." (*Id.*) Not so. Niokit's counterclaims seek to cancel Stussy's trademarks. (Dkt. 82 at 12-15). Cancellation asks whether a right exists; infringement asks whether that right was violated. Those are distinct inquiries, under different bodies, for different reasons. While perhaps trademark cancellation and unenforceability share similar DNA, that is insufficient. Stussy's point is further belied by its mistaken belief that Niokit filed an action under the Declaratory Judgment Act. (*See* Dkt. 93 at 3-4). (Dkt. 82). Stussy's positions built on this erroneous pretense collapse.

The bulk of Stussy's next arguments attack the allegations of Niokit's counterclaims, including that Niokit's Counts I and II against Trademark Reg. No. 5,291,490 must fail because that trademark is incontestable. (Dkt. 93 at 4-7). Start with incontestability. An incontestable trademark enjoys statutory protections and presumptions. *See* 15 U.S.C. §§ 1064, 1065; 15 U.S.C. § 1115(b). These issues need not be addressed because Niokit fails to challenge Stussy's assertion that Trademark Reg. No. 5,291,490 is incontestable. (Dkt. 97 at 5, 9-11, 18). Niokit instead asserts that its incontestability has no effect on Trademark Registration Nos. 6,885,821 and 7,115,443. (*Id.*) The Court will not construct arguments for Niokit and deems any position regarding the viability of Niokit's Counts I and II against Trademark Reg. No. 5,291,490 waived. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument" raised in a motion to dismiss "results in waiver."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("An unresponsive response is no response."). The Court takes no position on whether Trademark Reg.

No. 5,291,490 is incontestable. Counts I and II as to Trademark Reg. No. 5,291,490 are dismissed without prejudice.

Stussy asserts that the Court should dismiss Count I (failure to function as a trademark/ornamentality) and Count II (lack of distinctiveness) as to Trademark Registration Nos. 6,885,821 and 7,115,443 because Niokit fails to allege "plausible facts showing that the mark is merely ornamental and does not function as a source identifier." (Dkt. 93 at 5). Stussy contends that Niokit fails to allege "provide factual allegations identifying the specific marks or registrations, the specific goods covered by each registration, how [Stussy] uses the marks on various goods, or how each registered mark is perceived by consumers in connection with the relevant goods." (*Id.*) As to distinctiveness, Stussy asserts that Niokit "failed to present any facts as to the relevant purchasing public's understanding of [Stussy's] marks and [Stussy's] use." (*Id.* at 7).

Niokit counters that it plausibly alleged "concrete historical and marketplace facts" supporting its "failure-to-function theory," such as that the "billiard 8-ball imagery is a common ornamental and cultural motif that predates Stussy's asserted registrations." (Dkt. 97 at 13). It identified "Mattel's prior federal registration involving a black 8-ball design" and explained that the use of 8-ball imagery in fashion began "with the well-known eight-ball jacket around 1990." (*Id.*) Taking these allegations, along with its allegations of "widespread third-party ornamental use of 8-ball imagery on clothing, rugs, bags, accessories, home décor, and other consumer products," Niokit maintains that its allegations are sufficient to survive a motion to dismiss. (*Id.*) At last, Niokit notes that "[q]uestions concerning whether consumers perceive a designation as ornamentation or as a source identifier are inherently factual and ordinarily require development of an evidentiary record." (*Id.* at 11).

Trademarks are source identifiers. They can be "any word, name, symbol, or device, or any combination thereof that a person uses to identify and distinguish his or her goods from those manufactured or sold by others and to indicate the source of the goods." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 145 (2023) (cleaned up). They exist on a spectrum. They "may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.* "In contrast, generic marks," and those that "are merely descriptive of a product[,] are not inherently distinctive" and are thus "not registrable as trademarks." *Id.* at 768-69. "However, descriptive marks may acquire the distinctiveness which will allow them to be protected under the Act." *Id.* at 769. "The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Id.*

"It is also clear that eligibility for protection under § 43(a) depends on nonfunctionality." *Id.* "Discussing trademarks, and in general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (cleaned up). A "functional feature is one the exclusive use of which would put competitors at a significant non-reputation-related disadvantage." *Id.* (cleaned up).

There is no doubt that Niokit conflates and misstates several legal theories between its two Counts, resulting in confusing redundancies. (Dkt. 82, ¶¶ 28-80). Yet this does not warrant dismissal. "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of

a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up). Niokit's allegations satisfy this standard.

Niokit puts Stussy on fair notice that it seeks to cancel Trademark Reg. Nos. 6,885,821 and 7,115,443 because Niokit alleges that they are not trademarks but merely ornamental. (Dkt. 82, ¶¶ 28-80). Niokit also puts Stussy on fair notice that it seeks to cancel these trademarks alleging that they lack distinctiveness—i.e., they are generic or merely descriptive but lacking secondary meaning. (*Id.*) Stussy's assertion that "[t]o have adequately pled cancellation due to ornamentality, [Niokit] must have alleged specific, plausible facts showing that the mark is merely ornamental and does not function as a source identifier," is erroneous and otherwise fails because Niokit does just that. (Dkt. 93 at 5). For Count I, Niokit alleges that the trademarks "fail to function as trademarks because relevant consumers would perceive the designs as decorate billiard-ball motifs rather than as designations of Stussy as source." (Dkt. 82, ¶ 49). Niokit also alleges that "[t]he asserted registrations, as pleaded and enforced by Stussy in this case, improperly claim exclusive trademark rights in a common ornamental design motif." (*Id.*, ¶ 48); (*see also id.*, ¶ 34). Niokit provided historical and contemporary support for its allegations that Stussy's trademarks are ornamental. (*See, e.g.*, *id.*, ¶¶ 35-37); (*see also* Dkts. 82-1 *through* 82-2).

Stussy's positions concerning lack of distinctiveness—that Niokit's allegations are general, conclusory, and fail to show that "consumers would not perceive the specific version of Plaintiff's mark as source-identifying when applied to the relevant goods"—again miss the mark. (Dkt. 93 at 7). For Count II, Niokit alleges that the asserted marks constitute a "common design, symbol, or motif that consumers do not perceive as identifying a single commercial source" and are therefore

not protectable absent sufficient acquired distinctiveness." (Dkt. 82, ¶ 55). It continues that "the asserted 8-ball design is not inherently distinctive as a source identifier for Stussy." (*Id.*, ¶ 57); (*see also id.*, ¶¶ 56, 59); (Dkt. 82-1); (Dkt. 82-2).

No more is required at the pleading stage. On a motion to dismiss the "court instead asks only whether the [counterclaims'] factual allegations, if taken as true, state a claim to relief that is plausible on its face." *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quotes omitted). Counterclaims "that satisf[y] this standard [are] well-pleaded and may proceed even if [they] strike[] a savvy judge that actual proof of the facts alleged is improbable." *Id.* (quotes omitted). "By design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery—even for claims that are likely to fail." *Id.* at 194. The remainder of Stussy's arguments—all based on irrelevant, non-binding, out-of-circuit law—fail. *Id.*

Stussy's last two arguments fixate on Niokit's third Count (unfair competition under Illinois common law and 815 ILCS 510/2). (Dkt. 93 at 8-11). Stussy asserts that the Court must dismiss Count III because it is barred by the *Noerr-Pennington* doctrine and fails to plausibly plead a claim of unfair competition. (*Id.*) The Court provides no opinion on the *Noerr-Pennington* doctrine because Niokit's allegations fail under Illinois law.

Niokit's third counterclaim is built on allegations that Stussy wrongfully filed a sham lawsuit against it. (Dkt. 82). "Under Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) (citing *Lyddon v. Shaw,* 56 Ill.App.3d 815 (2d Dist. 1978)). Niokit "has not cited an Illinois case in which an unfair competition claim was successfully asserted on the basis that the defendant had improperly used litigation as a means of competition." *See Harris Custom Builders, Inc. v. Hoffmeyer*, 834 F. Supp. 256, 262 (N.D. Ill.

1993) (dismissing counterclaim for unfair competition based on allegations that plaintiff "wrongfully pursued an infringement action" against the defendant); *see also Knoll Pharms. Co. v. TEVA Pharms. USA, Inc.*, 2001 WL 1001117, at *2 (N.D. Ill. Aug. 24, 2001) (dismissing unfair competition counterclaim based solely on Plaintiffs' prosecution of an infringement lawsuit); *DreBest PTE Ltd. v. Ink & Rags LLC*, 2026 WL 2920956, at *6-8 (N.D. Ill. Sept. 29, 2026) (dismissing claims under similar circumstances); *Ybarra v. Centrust Bank, N.A.*, 2024 IL App (1st) 232072-U, ¶ 42 ("Illinois recognizes only two causes of action, malicious prosecution and abuse of process, for the wrongful filing of a lawsuit.").

Niokit asserts that common law unfair competition is an elusive, ill-defined cause of action that encompasses theories where one party interferes with another party with conduct that "shocks judicial sensibilities" and "violates standards of commercial morality." (Dkt. 97 at 17) (quoting *Int'l Star Registry of Illinois, Ltd. v. RGIFTS Ltd.*, 2025 WL 2766304, at *6 (N.D. Ill. Sept. 26, 2025)). Under this flexible standard, it maintains that its allegations survive dismissal. *Id.* The problem with this position is that, unlike in *Int'l Star Registry*, Niokit's unfair competition claims are based solely on Stussy's litigation. (Dkt. 82, ¶¶ 64-80). Even if Niokit alleges that the lawsuit is a sham and even if that qualifies as something that "shocks judicial sensibilities," none of this escapes the fact that "[u]nder Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." *Havoco*, 702 F.2d at 647; *Pantone v. Demos,* 59 Ill. App. 3d 328, 331 (1978); *Lyddon*, 56 Ill. App. 3d at 821-22; *Ybarra*, 2024 IL App (1st) 232072-U, ¶ 42. Niokit also fails to address how its claims survive under 815 ILCS 510/2 and thus has waived any argument. *Supra* at 3, n.1. Count III is dismissed without prejudice.

**CONCLUSION**

The Court denies Niokit's Motion to Vacate the Preliminary Injunction (Dkt. 71), grants in part Niokit's Motion for Reconsideration of the Court's Order Granting Expedited Discovery (Dkt. 75), denies Stussy's Motion for Attorney's Fees (Dkt. 89), and grants in part Stussy's Motion to Dismiss Niokit's Counterclaims. (Dkt. 93).

Virginia M. Kendall
United States District Judge

Date: November 12, 2026